[No. 28638-6-II.  Division Two.  August 12, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. CODY MICHELLE HAWS, *Appellant*.

*Michael G. Borge*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Tonya R. Riddell, Deputy*, for respondent.

BRIDGEWATER, J. — Cody Michelle Haws, a juvenile, appeals the denial of her motion for a deferred disposition on charges of unlawful imprisonment and fourth degree assault. We hold that the court did not err when it considered the nature of the offense in denying her motion. We affirm.

FACTS

On December 12, 2001, the State charged Haws with unlawful imprisonment, fourth degree assault, and sexual exploitation of a minor. The juvenile court dismissed the sexual exploitation charge. Haws then pleaded guilty to the remaining charges and moved for a deferred disposition.

In response to this motion, the superior court commissioner ordered a presentence disposition report. The disposition report detailed the facts of the offense, including facts related to the sexual exploitation charge.[1] After discussing the status of Haws's co-respondents and her family, school, and personal background, the report writer recommended that the commissioner deny Haws's motion.[2] After hearing

---

[1] The report stated that Haws and several of her friends planned and executed an act of revenge against a young man who they believed had propositioned one of Haws's friends and stolen liquor from a house party Haws had not attended. Haws and her friends "lured" the victim over to one of their homes with promises of sexual favors, bound his hands with zip ties, pulled down his pants, took digital photographs of him, and told him that they were going to post the images on the Internet. The victim physically and verbally resisted, at least two people lay over his chest to hold him down during the incident, and he believed that during the incident his penis became exposed and his assailants took photographs of it. He reported that the zip ties hurt his wrists, and Haws later stated that the victim's hands turned purple during the ordeal. A short time after taking the photographs, Haws and her friends released the victim and deleted the digital photographs.

[2] The report also stated:

Based on Cody's admission, this offense was an act of revenge. Cody states that they "needed to get [the victim] back for what he did . . . [they] took matters into their own hands and taught [the victim] a lesson." This raises a concern; Cody was willing to participate in the commission of a violent offense without any prior relationship to the victim or the matter at hand. Also of concern, the fact that this crime was premeditated by all of the youth [sic] involved and not something that Cody walked into after the fact. Code words were developed as well as a plan of implementation. This assault involved the exposing of the victim's genitalia and humiliation that lasted for the larger part of an hour. During this hour the victim continued to cry out and plead with his attackers to end the abuse. Given the physical nature and severity of this

argument on the motion and statements from Haws and her father and reviewing the presentence disposition report, the commissioner found that Haws was eligible for a deferred disposition but denied her motion in part because of "the nature of the offense." 2 Report of Proceedings (RP) (Mar. 1, 2002) at 45.

Arguing that the commissioner should not have considered the nature of the offenses beyond determining whether the offenses made Haws ineligible for a deferred disposition, Haws moved to revise the commissioner's ruling. The superior court denied the motion.

## DISCUSSION

Haws contends that under the plain language of RCW 13.40.127, the juvenile court erred when it considered the nature of the underlying offenses in deciding whether to grant her motion for a deferred disposition. She asserts that once the court determined that the offenses did not make her ineligible for a deferred disposition under RCW 13-.40.127(1), the language of RCW 13.40.127(2) restricts the court to consulting with her parents or guardian and to considering "whether the offender and the community will benefit from a deferred disposition before deferring the disposition." She argues that this language precludes the court from considering the nature of the underlying offenses. We disagree.

This issue involves the interpretation of a statute. Statutory interpretation is a question of law that we review de novo. *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002). In interpreting statutory provisions, our primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. *State v. Sullivan*, 143 Wn.2d 162,

crime, coupled with Cody's admission that it was premeditated, as well as the fact that the co-respondents in this case have all been placed on community supervision, Deferred Disposition cannot be recommended by this writer.
Clerk's Papers (CP) at 36-37.

174-75, 19 P.3d 1012 (2001). To determine legislative intent, we look first to the language of the statute. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). If the statute is clear on its face, we must derive its meaning from the plain language of the statute alone. *Keller*, 143 Wn.2d at 276. But unlikely, absurd, or strained results from a literal reading should be avoided. *McDougal*, 120 Wn.2d at 350.

Under RCW 13.40.127, the juvenile court has discretion to defer the disposition of a case if (1) the juvenile is eligible for a deferred disposition; and (2) the court determines, after consultation with the juvenile's custodial parents or guardians, that the juvenile and the community will benefit from a deferred disposition.[3] RCW 13.40.127(1), (2). If the juvenile fully complies with the conditions of supervision and fulfills any restitution obligation, the juvenile court will vacate the guilty plea and dismiss the charges with prejudice. RCW 13.40.127(9). A juvenile (1) charged with a sex or violent offense, (2) with a criminal history that includes any felony, (3) with a prior deferred disposition or adjudication, or (4) who has two or more adjudications is not eligible for a deferred disposition. RCW 13.40.127(1). If the juvenile is not eligible or the juvenile court denies the motion, then an adjudicatory or dispositional hearing is in order. RCW 13.40.130(2), .150.

■■■ We note that the Juvenile Justice Act of 1977, chapter 13.40 RCW, was intended, among other stated aims, to protect citizens; to make juveniles accountable for their

---

[3] RCW 13.40.127 states in part:

(1) A juvenile is eligible for deferred disposition unless he or she:

(a) Is charged with a sex or violent offense;

(b) Has a criminal history which includes any felony;

(c) Has a prior deferred disposition or deferred adjudication; or

(d) Has two or more adjudications.

(2) The juvenile court may, upon motion at least fourteen days before commencement of trial and, after consulting the juvenile's custodial parent or parents or guardian and with the consent of the juvenile, continue the case for disposition for a period not to exceed one year from the date the juvenile is found guilty. The court shall consider whether the offender and the community will benefit from a deferred disposition before deferring the disposition.

criminal behavior; to provide treatment, supervision, and custody; and to provide punishment commensurate with the juvenile's age, the crime, and the juvenile's criminal history. RCW 13.40.010(2)(a), (c), (f), (d). In light of these stated aims, we hold that RCW 13.40.127(2) grants the juvenile court broad discretion as to whether it should defer disposition.

Although RCW 13.40.127(2) directs the juvenile court to make its determination with the benefit to the juvenile and community in mind and in consultation with the juvenile's parents or guardians, it does not enumerate or exclude any *factors* the court must or must not consider in making this determination. Thus, we look at the plain language and the purpose of the Act to determine what factors the juvenile court may consider.

■ ■ Several factors demonstrate that the court has discretion to examine a broad range of factors, *including* the underlying offense. First, there is no specific language in RCW 13.40.127 prohibiting the juvenile court from considering the underlying offense. Second, the juvenile court must consider the underlying offense in order to ensure that the punishment, if any, is commensurate with the crime. *See also* RCW 13.40.150.

Third, and most importantly, it would be an absurd and irrational reading of the statute and contrary to the goals of the Juvenile Justice Act to prohibit the juvenile court from considering the offense when determining whether the juvenile and community would benefit from a deferred disposition. The facts of the underlying offense are highly relevant and may provide the juvenile court with important insight into both the juvenile's needs related to treatment, supervision, and custody and what is required to ensure that the community is adequately protected.

Further, in interpreting an act, we must look to the act as a whole and interpret the provision so as to give meaning to all parts. *State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994). Accordingly, an examination of more than just the deferred disposition statute is instructive.

If the juvenile court denies a motion for a deferred disposition and the juvenile pleads or is adjudicated guilty, then a dispositional hearing takes place under RCW 13.40.150. RCW 13.40.150 specifically directs juvenile courts conducting disposition hearings to examine *"all relevant and material evidence,"* including *"the facts supporting the allegations of criminal conduct by the respondent*[,]" the "information and arguments offered by parties and their counsel[,]" and the predisposition reports before making a dispositional determination. RCW 13.40.150(1), (3)(a), (b), (c) (emphasis added). Additionally, the nature of the underlying offense is not among the factors RCW 13.40.150(4) prohibits the juvenile courts from considering.[4] Thus, RCW 13.40.150 indicates that the juvenile court not only may but *must* consider the underlying offenses before making a dispositional determination. And it would be absurd and illogical to hold that the juvenile court could not consider these same factors when deciding whether to defer disposition.

Thus, we hold that although the juvenile court may not be required to consider the facts related to the underlying offense when deciding whether to defer disposition, it is well within its discretion to do so. Accordingly, the commissioner did not err when it considered the nature of the underlying offenses, and the juvenile court did not err when it denied Haws's motion to revise the commissioner's ruling.

Affirmed.

HUNT, C.J., and HOUGHTON, J., concur.

---

[4] RCW 13.40.150(4) states that the juvenile court may not consider (1) the sex of the respondent; (2) the race, color, creed or religion, economic or social class of the respondent or her family; or (3) factors indicating that the respondent might be a dependent child.